IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CYNTHIA AINSWORTH,

        Plaintiff,                         No. CIV S-06-1550 GGH

        vs.

MICHAEL J. ASTRUE,[1]
Commissioner of
Social Security,

        Defendants.               <u>ORDER</u>
_____/

        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). For the reasons that follow, plaintiff's Motion for Summary Judgment is granted, the Commissioner's Cross Motion for Summary Judgment is denied, and judgment is entered for the plaintiff.[2]

---

[1] Michael J. Astrue became Commissioner on February 12, 2007. Accordingly, he should be substituted as defendant in this suit. Fed. R. Civ. P. 25(d)(1). No further action need be taken by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] On May 14, 2007, plaintiff lodged a proposed stipulated order requesting an extension of time to respond to defendant's cross-motion. It did not come to this court's attention until the

BACKGROUND

Plaintiff, born April 19, 1973, applied for disability benefits on July 28, 2003. (Tr. at 69.) She alleges inability to work since October 24, 1999, due to post traumatic stress disorder ("PTSD"), anxiety, panic attacks, depression, forgetfulness, cognitive disorder, impaired concentration, nightmares, and skull fracture from an assault. (Tr. at 69, 42, 211.) In a decision dated March 7, 2005, ALJ James M. Mitchell determined that, pursuant to the law precluding disability benefits where substance abuse is a material contributing factor, plaintiff was not disabled.[3] The ALJ made the following findings:

\\\\\

---

present time. Because plaintiff did not go ahead and file a reply on May 25, 2007, as requested, the court assumes that she changed her intention to file one.

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

1. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

2. The claimant's posttraumatic stress disorder and dysthymic disorder are considered "severe" based on the requirements in the Regulations 20 CFR § 416.920(b).

3. With the claimant's substance abuse, the undersigned finds that the claimant's substance abuse related affective disorder causes her to experience moderate restrictions of her activities of daily living and maintaining social functioning. She experiences marked deficiencies of concentration, persistence or pace, and the claimant has had one to two episodes of deterioration. Accordingly, the claimant meets the requirements of listing 12.09 for drug addiction.

4. Including the effects of the claimant's substance abuse, these medically determinable impairments meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. Excluding the effects of the claimant's substance abuse, the claimant would have no impairment that meets or medically equals the criteria of any of the listed impairments described in 20 CFR Part 404, Subpart P, Appendix 1.

5. The undersigned finds that claimant's allegations and those of third parties regarding the claimant's limitations are not credible for the reasons set forth in the body of the decision.

6. The undersigned finds that the claimant suffers from slight to moderate pain and retains the residual functional capacity to perform light work as follows: slight limitation in attention/concentration and understanding/memory; no vision, hearing or reaching limitation; slight limitation with gross manipulation in her dominant hand; slight limitation in ability to do simple routine repetitive tasks; unlimited contact with the public; and, requires occasional supervision.

7. Without her substance abuse, the claimant's mental impairments and related limitations demonstrate mild limitations in activities of daily living, moderate limitations in maintaining social functioning and mild limitations maintaining concentration, persistence or pace. The claimant has had only one or two episodes of decompensation of extended duration. The claimant retains the understanding and memory, sustained concentration and persistence, social interaction and adaptation skills necessary to engage in substantial gainful employment.

8. The claimant is unable to perform any of her past relevant work (20 CFR § 416.965).

9. The claimant is a "younger individual between the ages of 18 and 44" (20 CFR § 416.963).

10. The claimant has a "limited education" (20 CFR § 416.964).

11. The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case (20 CFR § 416.968).

12. The claimant has the residual functional capacity to perform a significant range of light work (20 CFR § 416.967).

13. Although the claimant's exertional limitations do not allow her to perform the full range of light work, using Medical-Vocational Rule 202.17 as a framework for decision-making, there are a significant number of jobs in the national economy that she could perform. Examples of such jobs include work as a laundry worker of which there are 15,000 jobs in the regional economy as defined above.

14. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 416.920(g)).

(Tr. at 25-26.)

## ISSUES PRESENTED

Plaintiff has raised the following issues: A. Whether the ALJ Erred in Finding that Plaintiff Met the Requirements of Listing 12.09 But That For Her Substance Abuse, She Was Not Disabled; B. Whether the ALJ Failed to Set Forth Clear and Convincing Reasons for Rejecting the Opinion of Consulting Psychiatrist Dr. Kalman; C. Whether the ALJ Erred In Finding Plaintiff Could Perform Her Past Work Because It Was Never Performed at the Substantial Gainful Activity Level; and D. Whether the Commissioner Failed to Establish Other Work in the National Economy That Plaintiff Could Perform.

## LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in

4

the record as a whole supports it. Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988), citing Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence means more than a mere scintilla of evidence, but it is less than a preponderance, Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996), citing Sorensen v. Weinberger, 514 F.2d 1112, 1119 (n.10) (9th Cir. 1975). "It means such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct. 1420 (1971), quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206 (1938). The record as a whole must be considered. Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986).

ANALYSIS

Defects in analysis run throughout the decision, and the court is unable to get past those defects. First, the ALJ, in discussing plaintiff's onset date, correctly observed for purposes of benefit payment, plaintiff's onset was hinged to her application date, but his related conclusion: "Thus, the undersigned will not consider the medical records for the period before the filing date," is a complete non-sequitur. Especially in psychiatric disability cases, history of treatment may be critical in assessing the long term affect of the illness on a particular individual, the seriousness of the disease, whether that individual responds well to therapy/medication or not, and a host of other questions. Older medical information may confirm the intractable nature of a disease. The ALJ deprived himself of relevant medical information. To what extent the information may be helpful in assessing plaintiff's psychiatric problems depends on its substance, but this court is not given license to review the medical records de novo.

To complicate matters the ALJ then *did* consider plaintiff's substance abuse prior to her application date to conclude that plaintiff was an active substance abuser despite the recent

\\\\\

\\\\\

\\\\\

medical information (post-application) that plaintiff was in early remission.[4]  He also considered information from the pre-application period to discount plaintiff's credibility.  Why the ALJ singled out "old" medical information for non-review, when all other "old" information was considered is a mystery.

The ALJ in this case based his analysis on plaintiff's past substance abuse, and applied a Bustamante analysis to determine whether alcoholism or drug addiction is a contributing factor material to the determination of disability.  Bustamante v. Massanari, 262 F.3d 949 (9th Cir. 2001); see 42 U.S.C. S 423(d)(2)(C); 20 C.F.R. SS 404.1535(a), 416.935(a). Pursuant to Bustamante, the ALJ should first determine pursuant to the five step inquiry, whether, including drug addiction or alcoholism, an applicant is disabled.  Bustamante, 262 F. 3d at 953-55.  Only after finding an applicant disabled, does the ALJ determine whether the applicant would still be disabled if he or she stopped using drugs or alcohol.  Id. at 954. Bustamante remanded, "with instructions that the ALJ proceed with step three (and four and five, if necessary) of the disability determination without attempting to separate out the impact of Bustamante's alcohol abuse."  Id. at 956.

In his decision, the ALJ found that, with substance abuse considered in conjunction with her severe psychological impairments of PTSD and dysthymic disorder, plaintiff met listing 12.09 for drug addiction.[5]  (Tr. at 21.)  In making the step three finding, the

---

[4] The ALJ discounted all of the medical expert information that plaintiff was in remission because the conclusion was "not supported by objective testing." (Tr. 21.) True, but neither was the expert conclusion refuted by objective testing. *There was no objective testing.* There were also no facts of record to show that plaintiff had slipped up.  The ALJ is not equipped to determine the remission issue out of the blue based on his "feel" for the matter; rather, if the ALJ believed he needed such objective testing, he should have developed the record.

[5] Another interesting question, on a path the court will not go down, is why the listings continue to include Listing 12.09 for presumptive impairment pursuant to substance abuse addiction disorders since Congress has determined that substance abuse is not a basis for disability.  The problem may be more theoretical than real, however, as Listing 12.09 merely incorporates the listings for other mental disorders.
    This listing provides in part:

6

decision comported with Bustamante, which plainly requires the ALJ first to determine whether, considering the substance abuse, the claimant still would meet the listed impairment. The ALJ acknowledged that, having found plaintiff disabled, he needed to consider whether plaintiff would be disabled absent substance abuse –"[b]ecause of this [42 U.S.C. § 1382c(a)(3)(J) addressing whether drug or alcohol addiction is a material contributing factor], the claimant's limitations, if [s]he were to stop her substance abuse, must be considered further." (Tr. at 21.)

The ALJ's mistake was in considering plaintiff to be currently abusing drugs and/or alcohol and finding that she meets listing 12.09 as a result. All of the evidence of record indicates that plaintiff stopped abusing substances in June, 2003, and did not relapse after that date. Chart notes diagnose polysubstance abuse in early remission as of June, 2003. (Tr. at 341.) On June 13, 2003, plaintiff had not used crank since April, 2003, alcohol since two weeks earlier, and marijuana one week earlier. (Id. at 340-41.) Other notes, dated August, September, and October, 2003, note that plaintiff was still in remission, and remained clean and sober. (Id. at 308, 336, 332.) On May 24, 2004, it was reported that plaintiff had successfully completed all phases of her treatment program. (Id. at 434.) At this time, her only mental health diagnoses were PTSD and depressive disorder NOS. Polysubstance abuse, or its remission, was not even mentioned. (Id. at 435.)

Furthermore, physicians Cheang and Garcia, who evaluated plaintiff on August 15, 2003, and September 4, 2003, after she ceased abusing drugs and alcohol, were consistent in finding that plaintiff's polysubstance abuse was in remission. (Id. at 308, 324.) It is significant

---

12.09 *Substance Addiction Disorders*: Behavioral changes or physical changes associated with the regular use of substances that affect the central nervous system.
  The required level of severity for this disorder is met when the requirements in any of the following (A through I) are satisfied.
...
B. Depressive syndrome. Evaluate under 12.04.
C. Anxiety disorders. Evaluate under 12.06.
...

7

1. to note that the ALJ placed substantial weight on these opinions, yet ignored these diagnoses.
2. Additionally, Dr. Kalman on August 4, 2004 did not diagnose substance abuse or even history of
3. it, but only diagnosed PTSD, rule out learning disorder NOS, and borderline intellectual
4. functioning.  (Id. at 442.)  Plaintiff denied drug and alcohol use to Dr. Kalman.  (Id. at 441.)  The
5. ALJ placed only some weight on this physician's opinion, and only because "the claimant
6. provided incorrect information concerning the medications she was taking."  (Id. at 21.)  He did
7. not discount it for any reason related to Dr. Kalman's lack of opinion regarding plaintiff's past
8. substance abuse. The ALJ did reject plaintiff's credibility in part based on her report of no
9. substance abuse to this doctor, but her record of remission brings into question the ALJ's finding
10. in this regard. (Id. at 18.)

11.         Additionally, at the hearing, the ALJ asked plaintiff only limited questions
12. regarding substance abuse.  He first asked, "do you drink?" to which she responded no.  (Id. at
13. 471.)  He then asked about her past drug use:

14.     Q    What was your drug of choice?
15.     A    Marijuana.
16.     Q    Did you do heroin, crack?
17.     A    No, no. Crank, I done.
18.     Q    LSD?
19.     A    No.
20.     Q    Pardon me?
21.     A    No.
22.     Q    What about crank?
23.     A    Yes, I done that in the past.
24.     Q    Speed?
25.     A    Same as, no.  I don't know same as -
26.     Q    Crystal meth?

1        A      Yes, I've done that in the past.

2        Q      Anything else?

3        A      No.

4        Q      Heroin?

5        A      No.

(Tr. at 475-76.) The ALJ significantly did not ask plaintiff about any current drug use, but only asked about current alcohol use. Further, her responses consistently referred to past use only.

All of the recitations to the record which the ALJ relied on in support of his finding of substance abuse are to old records predating her cessation. His reference to her lengthy history of use may be true, but he refers to records predating 2003. (Id. at 18.) These records from Stanislaus Behavioral Health Center date from 1999 to October 6, 2003 only. (Id. at 330-432.) The more recent of these records indicate remission as of June, 2003, as previously cited. Therefore, the ALJ erred in finding that plaintiff met listing 12.09, and considering substance abuse at any stage of the sequential analysis.

CONCLUSION

The case must be remanded for a proper assessment of the evidence. All aspects of the case are to be reconsidered in light of an assessment of the medical evidence as a whole. Plaintiff is not precluded from raising any of the contributions she has raised here.

Accordingly, IT IS ORDERED that plaintiff's Motion for Summary Judgment is granted, the Commissioner's Cross Motion for Summary Judgment is denied, and Judgment is entered for the plaintiff pursuant to section 4 of 42 U.S.C. 405(g).

DATED: 8/30/07

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
U.S. MAGISTRATE JUDGE

GGH/055:Ainsworth1550.ss.wpd